[File No. 5944.]

INTERIOR LUMBER COMPANY, a Corporation, Respondent, v. MARY KUNERT and Arthur O. Kunert, Appellants.

(237 N. W. 780.)

Opinion filed July 6, 1931.   Rehearing denied August 12, 1931.

*Lemke & Weaver,* for appellants.

324

*Shure & Murphy,* for respondent.

BIRDZELL, J. The instant proceeding was begun before a justice of the peace in Cass county to recover possession of property described as Lot 20 in Block 11, Reeves Addition to the City of Fargo. On affidavit of prejudice it was transferred to another justice and later, upon an answer raising a question of title, it was certified to the district court for trial. It was tried in the district court of Cass county before the Honorable A. T. Cole without a jury. At the conclusion of the trial judgment was entered awarding the plaintiff immediate possession of the property, damages for its detention and costs and a writ of restitution. From this judgment the defendants appeal to this court, de-

manding a trial de novo and also specifying errors. The facts may be briefly stated as follows:

From about January, 1925, to April 1927, one E. D. Meehan was the owner of record of the property in question. Mary Kunert, his sister, and Arthur O. Kunert, her husband, moved onto the property about the time Meehan acquired it, or, according to their testimony, before that date and have since occupied it as their home. At that time the only improvement thereon consisted of a small house. The property was of small value, the abstract showing that Meehan purchased the same at guardian sale and that the sale to him for $420 was confirmed in February, 1925. Soon afterward rather extensive improvements were undertaken and during the following years a duplex house was constructed by slow stages. It was not wholly completed at the time of the trial of the instant action, but the property had become worth something over $10,000. This improvement was largely financed by mortgages executed by Meehan. The following mortgages may be noted particularly:

In July, 1925, Meehan mortgaged the property to the Burrell State Bank of Horace, North Dakota, for $780 for an indebtedness he owed the bank. In December, 1925, he gave another mortgage to the Hopeman Material Company for $500 for materials which entered into the construction of the basement of the new house, and in the same month he gave to the Interior Lumber Company, plaintiff in this action, a mortgage for $800, which was likewise for materials. In September of the following year, he gave to the Red River Valley Mortgage Company two mortgages, one for $3,800 and another for $190. With the proceeds of the larger mortgage the three prior mortgages were satisfied, but, more materials being needed to finish the house, shortly after the $3,800 mortgage was executed and the prior mortgages satisfied, Meehan arranged to purchase additional lumber and material from the plaintiff and secured the account by giving a mortgage for $450 dated September 14, 1926. This mortgage was foreclosed and the property bid in by the Interior Lumber Company, to whom, no redemption being had, a sheriff's deed was issued on January 21, 1930. By deed dated April 12, 1927, Meehan had conveyed the property by warranty deed to Mary Kunert, a defendant herein, which deed conveyed the property free from incumbrances, et cetera, "except liens and incumbrances now

of record." All the mortgages above referred to were recorded. The property was occupied by the Kunerts during the time the improvements were being made and Arthur Kunert performed a large amount of labor in the construction of the house. In October, 1927, Arthur Kunert signed a waiver of any right to a lien for any labor. The waiver recited that Kunert waived a lien for any labor "performed on duplex residence now being constructed by me for E. D. Meehan on Lot 20, Block 11, Reeves Addition to Fargo, North Dakota, in favor of the Red River Valley Mortgage Co., and Interior Lumber Co., both of Fargo, N. D.," and in it he agreed that the mortgages given to them should be a lien paramount and superior to any claim or lien which he might have by reason of labor performed on the residence. All the material supplied by the plaintiff was charged to E. D. Meehan. As the state of completion warranted, the house was occupied by tenants and under the assignment of rents provision in the mortgage to the plaintiff some rents from such tenants were applied on the plaintiff's account against Meehan.

The defendants claim that at about the time they entered into possession of the premises there was an oral contract between Meehan and his sister, the defendant Mary Kunert, whereby for a certain cash payment which was made in two installments aggregating $500 and in consideration of the undertaking of Mary Kunert to provide a home for and care for an invalid sister, she, Mary Kunert, was to be the owner of the property; that at all times subsequent thereto she was the owner of the property; and that she and her husband occupied it as a homestead. This was substantially the only issue contested in the district court.

At the conclusion of the trial findings of fact were made by the court to the effect that on the date of the giving of the mortgage upon which the plaintiff's deed was issued, namely, September 14, 1926, Meehan was the owner of the property, that at his instance and request the plaintiff had furnished lumber and building material for the erection of the dwelling house and that the mortgage in question was subject only to the two prior mortgages of $3,800 and $190, respectively, to the Red River Valley Mortgage Company; that the deed given by Meehan to Mary Kunert was made and executed subsequently to the plaintiff's mortgage and subject to its lien; that the Kunerts had actual

knowledge of the contract between the plaintiff company and Meehan for the furnishing of material for the construction of the building and acquiesced in the same; and that the omissions of the defendants and their conduct toward the plaintiff misled it as to their pretended claim to the premises. These findings, if correct, amply warrant the judgment which was entered.

This is an action in forcible entry and detainer and is properly triable to a jury. Comp. Laws 1913, § 7608. It is for the recovery of specific real property and, though it involve issues concerning adverse claims of the defendants, it is not thereby converted into an equity suit. Burleigh v. Hecht, 22 S. D. 301, 117 N. W. 367. On appeal it is not triable de novo in this court. The statute providing for trial de novo here of actions tried in the district court without a jury, expressly provides that it shall not be applicable to actions or proceedings properly triable with a jury. Comp. Laws 1913, § 7846; Novak v. Lovin, 33 N. D. 424, 157 N. W. 297; United States Nat. Bank v. McCabe, 57 N. D. 456, 222 N. W. 474. The findings of fact of the trial court, therefore, come to this court clothed with the presumption that they are correct and they will be supported as against assignments of error challenging their correctness unless clearly opposed to the preponderance of the evidence. McCormick v. Union Farmers State Bank, 48 N. D. 834–839, 187 N. W. 421, and cases cited; United States Nat. Bank v. McCabe, supra.

The testimony of the defendant Mary Kunert, with respect to her purchase of the property from her brother Meehan, is not clear and consistent. She first testified that she bought it from him in 1927. She also said that she paid him $150 toward the purchase price when she moved in, which was some two years prior to 1927; that she was buying it for $3,500, but she later told her brother that she would pay $3,800; that she took it at $3,800; that she paid $350 in October of the same year. When asked specifically how much she was to pay her brother for the house she said: "We hadn't made any consideration on that. Q. You never had no consideration with your brother as to how much you were to pay him for the house? A. No, I didn't." When asked if she had a contract in writing with her brother she said "No, I don't think we did." When examined later as a witness in her own behalf she testified as follows: "Q. Was there any other consideration

for this property besides the $500 you paid your brother? A. Well then between my brother and I. You see I am taking care of an invalid sister; she stays with me and has been with me for nineteen years now, and that is the reason I didn't have to make any other payment to him, because it was through that way." Her testimony as to the care of the invalid sister being part of the consideration is further corroborated by her brother and her husband. But the original $500 consideration, which she claims to have paid, was apparently about the amount which her brother had paid for the property in its original condition. From her testimony concerning the building of the house, it would appear that she and her husband undertook to build it themselves and that Meehan was in effect an agent for the purpose of obtaining the material and financing the construction. Concerning this she testified:

"Q. Now at the time you say you moved on that property, was there a house there? A. A very small house there.

Q. Was there a four room house? A. Yes sir, four room house.

Q. And since that time has any other house been built on that property? A. It has been remodeled and built there.

Q. That is, the same house has been remodeled and rebuilt? A. My husband and myself.

Q. And where did you get the money to build it? A. The money to build the place?

Q. Yes? A. Through the loan.

Q. From whom? A. The Red River Mortgage Company.

Q. How much was that loan? A. I think that was $3,800.

Q. You built the house did you, you and your husband? A. Yes sir.

Q. For yourself? A. Yes sir.

Q. Did you sign this mortgage to the Red River Loan Company? A. No, I didn't.

Q. Who did? A. Mr. Meehan, I guess.

Q. You say you got the money from the Red River— A. Is what I understand, through him.

Q. Through who? A. Mr. Meehan.

Q. You claimed to be the owner of the property at that time? A. Yes sir.

Q. Did you file your deed? A. No sir.

Q. Never been filed? A. No sir.

Q. You tell me you borrowed the money from the Red River Valley Mortgage Company? A. No sir, I didn't.

Q. Who did? A. Mr. Meehan, I told you; he did.

Q. Why did he borrow the money, if you owned the property? A. Why did he borrow it?

Q. You don't know? A. No, I don't.

. . . . . . . . . . . . . . . . . .

Q. From whom did you buy the material to build the house? A. The material?

Q. Yes, the lumber and the material to build the house. A. Well, it was Mr. Kunert that done the buying.

Q. Well, he was your agent? A. Well no; he just looked after that for me.

. . . . . . . . . . . . . . . . . .

Q. You saw the lumber brought up there? A. Yes, there was lumber delivered there.

Q. You knew from time to time the Interior Lumber Company was bringing lumber up there? A. Yes, there was some brought there."

We are of the opinion that the above testimony of Mary Kunert, herself, amply warrants findings to the effect that the Kunerts had actual knowledge of the contract between the plaintiff company and Meehan for furnishing the material for the construction of the building and that they acquiesced in the same. It would further warrant a finding that they had in fact made Meehan their agent for the purpose of financing the construction of the house and had left the title in his name of record (if they were previously the owners) to enable him to mortgage it for the purpose of securing such material. The evidence otherwise shows that the mortgage in question was for material that actually went into the construction of the house and, hence, that its purchase was within the agency, if such agency existed. Under the evidence the Kunerts are clearly precluded from asserting any right in the property as against the plaintiff's mortgage. The findings of fact are not opposed to the preponderance of the evidence but are well sustained by the evidence.

The judgment appealed from is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, BURR, and BURKE, JJ., concur.